UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DEVONTE S. LIVELY,

         Petitioner,

     v.

MARK ROYCE, Superintendent of the
Green Haven Correctional Facility,

         Respondent.
_____

<u>DECISION AND ORDER</u>

19-CV-6844L

## INTRODUCTION

Petitioner Devonte S. Lively ("Lively"), through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his June 13, 2013 conviction in New York Supreme Court, Monroe County for murder in the second degree, N.Y. Penal L. § 125.25(1).  Respondent has filed a response in opposition to the petition.

## BACKGROUND

Early in the morning of March 25, 2012, Karen Snipes called the Rochester, N.Y. Police Department ("RPD") to report that her daughter, 17-year-old Larie Butler, was missing.  Snipes stated that Butler had called her the previous afternoon to ask permission to go to the mall with Lively, and that Snipes gave her permission, but that Butler was supposed to return home that evening.

When Butler did not return home, Snipes went to Lively's house at 18 Danforth Street in Rochester.  Lively told her that while he was with Butler, she received a text message from someone, and that at Butler's request he dropped her off at the corner of East Main and Ohio Streets in Rochester.

A police officer went to Lively's home and spoke to him.  Lively told the officer that after dropping off Butler on East Main Street, he drove alone to his grandmother's house at 174 Dorington Road in Irondequoit, a suburb of Rochester.

Police investigators contacted the service provider for Butler's cell phone and obtained the historical cell site location data ("CSLI") for her phone.  That data showed that she had made some calls to Lively's phone between 5:23 p.m. and 5:54 p.m. on March 24, and that she called another person at 7:06 p.m.  The CSLI for that last call was consistent with her being in the area of Dorington Road, but not near East Main Street.

On March 25, RPD Officer Aaron Eyrich went to 174 Dorington Road.  No one answered the door.  He then went over to a green garbage tote next to the house, opened it, and saw inside it a torn black bag.  Through the hole created by the tear (which he spread open to see better), Eyrich saw an orange sweatshirt with what appeared to be blood stains.

Other officers at the scene observed the backing of a cell phone and a cell phone battery in the front yard of the home.  The officers secured the scene and obtained a warrant to search the tote and seize the phone parts, which were later identified by Butler's family as being from her cell phone.

On March 27, police investigators obtained information about Lively's cell phone from his service provider.  That information showed at on March 24, at 10:14 p.m., a text message

was sent from that phone to a phone registered to Todd Douglass, reading, "Yall got n e rthing [sic] 2 clean up blood out a rug." A response was received at 10:20 stating, "I think so bt I dnt got no way 2 get it." At 10:25, another text was sent to Douglass from Lively's phone reading, "Fck well u kno a hood mixture." The phone data also showed that Lively's phone was active at around the same time as Butler's last call at 7:06 p.m., and that both phones were in the same vicinity on or near Dorington Road (which tended to contradict Lively's statements that he had dropped Butler off on East Main Street a short time earlier).

The police then obtained a second warrant, this time to search the premises both at Lively's house on Danforth Street and his grandmother's house on Dorington Road. The police searched the Dorington Road residence on the morning of March 29. The officers found apparent blood stains, a piece of an artificial fingernail, and a "drag mark" on a carpet inside the house.

Suspecting that Butler's body might be somewhere nearby, the officers noticed that the house next door had a swimming pool with a cover on it. They searched the pool (apparently with the homeowner's consent) and discovered Butler's body. An autopsy revealed that the cause of her death was multiple stab wounds and blunt force injury to the head.

Lively was then charged with murder. Prior to trial, Lively's lawyer moved to suppress physical evidence seized from 174 Dorington Road pursuant to the search warrants, and the trial court denied the motion, primarily due to Lively's lack of standing as to his grandmother's house. Trial counsel also moved to suppress the CSLI obtained from Lively's phone without a warrant, and the trial court denied the motion, largely on the ground that it was untimely filed.

The case went to trial, and Lively was convicted upon a jury verdict of murder in the second degree.  The conviction was affirmed by the Appellate Division, Fourth Department, 163 A.D.3d 1466, and the New York Court of Appeals denied leave to appeal, 32 N.Y.3d 1065 (2018).

Lively filed his habeas corpus petition in this Court on November 15, 2019.  He asserts a single ground for relief, ineffective assistance of counsel, based on several alleged failures and errors by his trial attorney.

## DISCUSSION

### I. Habeas Corpus Cases:  General Principles

At the outset, certain principles must be kept in mind.  First, in reviewing state criminal convictions in a federal habeas corpus proceeding, a federal court does not sit as a super-appellate court, to decide matters of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  That long-established principle was reinforced by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, when a claim has been adjudicated on the merits in state court, federal courts must give deference to the state courts' findings and conclusions.  On questions of pure fact, "[s]tate court fact-findings, if fairly made, are accorded a presumption of correctness unless the objecting party rebuts the presumption by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  On "mixed" questions involving both factual findings and conclusions of law, federal habeas corpus relief is available only if the state court proceeding:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the

United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). That standard poses "a formidable obstacle to habeas relief ... ." *Clark v. Noeth*, 351 F.Supp.3d 369, 371 (W.D.N.Y.), *appeal dismissed*, 2019 WL 7876471 (2d Cir. 2019).

Where a state court rejects a petitioner's habeas claim on the merits, then, "the federal court must 'focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.'" *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir. 2001) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001)) (additional citations omitted). "A state court decision slips into the 'unreasonable application' zone 'if the state court identifies the correct governing legal principle from [the Supreme Court's] decision but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (modification in original). To meet that standard, it is not enough that this Court may have decided the question of law differently; rather, to deem habeas relief appropriate, the state court's application must demonstrate some additional "increment of incorrectness beyond error." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000).

## II. Claims Relating to Alleged Ineffective Performance of Trial Counsel

As stated, all of petitioner's grounds for relief are based on the allegedly ineffective performance rendered to him by his trial attorney. To prevail on such a claim, a habeas petitioner must demonstrate both that "counsel's representation fell below an objective standard of reasonableness" and that he suffered actual prejudice as a result, *i.e.*, that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  This two-part test imposes a heavy burden on one claiming ineffective assistance of counsel.  Both prongs must be established to warrant relief.  *Id.*

In determining whether the test has been met, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).  As such, "decisions which fall squarely within the ambit of trial strategy ... if reasonably made, will not constitute a basis for an ineffective assistance claim." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987).  The court must also bear in mind that the *Strickland* standard "does not guarantee perfect representation, only a reasonably competent attorney." *Harrington*, 562 U.S. at 110 (internal quotation marks and citations omitted).

A habeas petitioner presenting a claim of ineffective assistance of counsel "faces an additional hurdle:  the high standard of deference that this Court owes to the state court's finding that he received constitutionally adequate assistance." *Rupert v. Noeth*, 510 F.Supp.3d 3, 7 (W.D.N.Y. 2020) (citing *Winfield v. Dorethy*, 956 F.3d 442, 451 (7th Cir. 2020)).  He would have to show not only that his attorney was ineffective, but also that the state court's ruling is "so lacking in justification that there was an error ... beyond any possibility of fairminded disagreement." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013).  This "doubly deferential" standard, *id.* at 16, presents a "formidable barrier" to a habeas petitioner, *id.* at 19.

### III. Application to this Case

In his habeas petition, Lively contends that his trial attorney rendered ineffective assistance by failing to:  (1) timely move to suppress Officer Eyrich's observations during his warrantless search of the garbage tote and the fruits of that search, and to establish Lively's standing to make such a motion; (2) timely move to suppress the contents of Lively's text messages and the CSLI from his phone; and (3) object to certain statements by the prosecutor in her opening statement and closing argument.[1]

Petitioner raised these arguments in his appeal, and the Appellate Division rejected each of them.  The court expressly "conclude[d] that defendant was afforded meaningful representation." *People v. Lively*, 163 A.D.3d at 1466.  Concerning the search of the garbage tote, the court stated, "Although we agree with defendant that the search of the garbage tote in the curtilage of his grandmother's house is presumably unconstitutional, we conclude that, in light of the particular circumstances that led the police officers to the premises in search of a recently missing 17-year-old girl, that limited search fell within the recognized emergency exception to the warrant requirement."  *Id.* at 1467.  "Thus," the court added, "even assuming, arguendo, that defendant had standing to challenge the search of the tote located at his grandmother's home, we conclude that the motion to suppress evidence obtained from the tote, if timely made, would not have been successful and that defense counsel was not ineffective in failing to make that motion in a timely manner."  *Id.*

---

[1] As stated, trial counsel did file a suppression motion as to the evidence seized from 174 Dorington Road pursuant to a warrant, which was denied for lack of standing.  Petitioner's habeas claim is mostly premised on his contention that his attorney should have asserted and demonstrated facts establishing his standing to challenge the warrantless search of the tote.

With respect to petitioner's contention that defense counsel was ineffective in failing to make a timely motion to suppress the CSLI and text messages sent to and received by his phone, the court stated that "there is little or no chance that the motion to suppress the historical CSLI or text messages, if timely made, would have been successful."  *Id.* at 1468.  The court said that although the United States Supreme Court has held that "an individual maintains a legitimate expectation of privacy in the record of his physical movements as captured through CSLI," *id.* at 1467 (quoting *Carpenter v. United States*, 585 U.S. __, 138 S. Ct 2206, 2217 (2018)), "[t]he Supreme Court recognized that case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances.'" *Id.* at 1468 (quoting *Carpenter*, 138 S. Ct. at 2222).  One such circumstance, the Appellate Division stated, is the existence of exigent circumstances, such as "an urgent situation" in which an individual is "threatened with imminent harm."  "Lower courts, for instance, have approved warrantless searches related to ... child abductions."  *Id.* (quoting *Carpenter*, 138 S Ct at 2223) (additional citations omitted).

Stating that "[t]he Court was very clear that its decision in *Carpenter* did not 'call into doubt warrantless access to CSLI in such circumstances,'" *id.* (quoting *Carpenter*, 138 S. Ct. at 2223), the Appellate Division said that "[a]pplying the decision in *Carpenter* to CSLI as well as text messages, we conclude that defense counsel was not ineffective in failing to make a timely motion to suppress either the CSLI or the text messages." *Id.* (citing *People v. Caban*, 5 N.Y.3d 143, 152 ("There can be no denial of effective assistance of trial counsel arising from counsel's failure to make a motion or argument that has little or no chance of success").

The court also addressed and rejected petitioner's assertion that his trial attorney was ineffective for not objecting to certain statements by the prosecutor to the jury, which

mischaracterized the DNA evidence as showing that Lively's DNA "matched" DNA found on a fragment of the victim's acrylic fingernail, when in fact the evidence showed only that Lively could not be excluded as the source of the DNA on the nail.  The court said that it was improper for the prosecutor to make that statement, but that defense counsel's failure to object did not render counsel's assistance ineffective.  Noting that the testimony at trial established that "the chance of randomly selecting an unrelated individual as the source of the DNA was less than one in 114,000," the court concluded that "the sole mischaracterization of the DNA evidence did not rise to the flagrant and pervasive level of misconduct that would deprive defendant of due process, and defense counsel was not ineffective in failing to object to the single improper comment."  *Id.* at 1469 (internal quotes, citations and alteration omitted).

Confronted with these findings and conclusions, Lively argues in support of his habeas petition that this Court may not blindly accept the state court's rulings, but must conduct its own analysis and reach its own independent conclusion as to whether the state court's decision was reasonable.  He contends that it was not.  While I do not quarrel with the former proposition, I part company with petitioner as to the latter.

Certainly federal courts deciding habeas cases can, should, and do engage in independent examinations of the record and legal analysis; they do not just rubber-stamp state court decisions.  At the same time, however, the federal court must also remain mindful that a state court's findings *are* entitled to deference, as explained above.  *See Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1191-92 (2018) (In "[d]eciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact," the federal habeas court must "'train its attention on the particular reasons–both legal and

factual–why state courts rejected a state prisoner's federal claims'" and give "deference to that

decision") (quoting *Hittson v. Chatman*, 576 U.S. 1028, 135 S. Ct. 2126, 2126 (2015) (Ginsburg,

J. concurring in denial of certiorari)) (internal quotations omitted). *See also Drake v. Portuondo*,

321 F.3d 338, 345 (2d Cir. 2003) ("a state court's conclusions of law are ... entitled to

considerable deference under AEDPA").

     The problem for petitioner in this case is that the Appellate Division's findings and

conclusions were *not* unreasonable, either on the facts or the law.  As to the search of the

garbage tote, though petitioner strenuously argues that the Appellate Division "got it wrong" on

the underlying Fourth Amendment issue, he has not demonstrated that the state court's

conclusion that a motion to suppress the fruits of that search would have been unsuccessful, and

that Lively's attorney was not constitutionally ineffective for failing to make such a motion.[2]

     Petitioner contends that a 17-year-old girl's failure to return home on time does not

present an "emergency" situation justifying a warrantless search.  But each case must be

determined on its particular facts.  Here, Butler was not simply late returning home; she had been

missing since the night before.  In addition, the CSLI from Butler's phone indicated that,

contrary to Lively's insistence that he had dropped Butler off on East Main Street in Rochester,

her cell phone was used a short time later in the vicinity of Lively's grandmother's house in

Irondequoit.

     While those facts do not necessarily *compel* the conclusion that the warrantless search of

the garbage tote was justified by the emergency exception, that is not the question before me.  As

---

[2] Petitioner recognizes that he is barred from directly seeking habeas relief on Fourth Amendment grounds, by virtue of *Stone v. Powell*, 428 U.S. 465 (1976) (where state provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner cannot be granted habeas corpus relief on the ground that evidence obtained through an unconstitutional search and seizure was introduced at his trial).

stated, it is not this Court's function to second-guess the state courts, or to decide whether I would have reached the same conclusion.  The question is whether the state court's ruling was contrary to clearly established Supreme Court precedent, or was based on an unreasonable determination of the facts in light of the evidence.  The answer to both questions is "no."  Since the Appellate Division reasonably determined that a motion to suppress would not have been successful, its conclusion that trial counsel was not ineffective for failing to make such a motion was likewise neither unreasonable nor contrary to clearly established federal law.

The same is true of the Appellate Division's finding that there was "little or no chance that [a] motion to suppress the historical CSLI or text messages, if timely made, would have been successful."  As the court noted, the Supreme Court's decision in *Carpenter* did not limit the ability of police to obtain warrantless access to CSLI in exigent circumstances, such as situations involving a threat of imminent harm to a person.  As stated, the state court's finding that urgent circumstances existed here was not unreasonable, and was not contrary to *Carpenter* or other clearly established law.

As to counsel's failure to object to the prosecutor's remarks about the DNA evidence, the state court recognized that the comments were improper, but the court reasonably concluded that they were not so flagrant, inflammatory or pervasive as to deprive petitioner of due process or a fair trial.  In light of the overwhelming evidence of Lively's guilt, I fully agree with the state court that trial counsel's failure to object did not render his performance ineffective.

**CONCLUSION**


For all the reasons stated above, there is no basis to grant habeas corpus relief in this case. Therefore, the petition for a writ of habeas corpus (Dkt. #1) is DENIED.  The Court also denies issuance of a certificate of appealability because petitioner has failed to make a substantial showing of the denial of any constitutional right.

IT IS SO ORDERED.


_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        December 10, 2021.